


FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 AUG 15  AM 11:40

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

*Sandra Wilkinson*
*Chief, Major Crimes Section*
*Sandra.Wilkinson@usdoj.gov*

DIRECT: 410-209-4921
MAIN: 410-209-4800

July 9, 2018

Shari Derrow
Andrew R. Szekely
Assistant Federal Public Defenders
Office of the Federal Public Defender
 for the District of Maryland
100 S. Charles Street, Tower II, 9th Floor
Baltimore, Maryland 21201

     Re:    <u>United States v. Travis Wilmoth,</u> Criminal No. TBD (Mag. No. 18-1426 (SAG))

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Travis Wilmoth, (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by July 23, 2018, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to waive indictment and plead guilty to a one count Information charging the Defendant with Travel with Intent to Engage in Illicit Sexual Conduct with a Minor, in violation of Title 18, United States Code Section 2423(b). The Defendant admits that he is, in fact, guilty of the offense(s) and will so advise the Court.

### Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That on or about the time alleged in the Information, in the District of Maryland:

    a.    The Defendant traveled in interstate commerce;

1

b. The travel was for the purpose of engaging in any illicit sexual conduct (as defined in 18 U.S.C. § 2423(f)) with another person; and

c. The illicit sexual conduct was a sexual act (as defined in 18 U.S.C. § 2246) with a person under 18 years of age that would be in violation of chapter 109A (of Title 18) if the sexual act occurred in the special maritime and territorial jurisdiction of the United States.

### Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MANDATORY MINIMUM IMPRISONMENT | MAXIMUM IMPRISONMENT | MAXIMUM SUPERVISED RELEASE | MAXIMUM FINE | SPECIAL ASSESSMENT |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2423(b) | none | 30 years | Life time | $250,000 | $100/$5,000 (18 U.S.C. § 3014) |

a. *Prison*: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. *Supervised Release*: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

c. *Restitution*: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. *Payment*: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. *Forfeiture*: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. *Collection of Debts*: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant

2

Rev. May 2018

authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Sex Offender Registration and Additional Special Assessment

4. The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

### Waiver of Rights

5. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

    d. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    e. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant

chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

f.  If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

g.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

h.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

i.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7.  This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further

4

agree to the following Sentencing Guidelines:

    a.      The applicable base offense level is 24. U.S.S.G. § 2G1.3(a)(4).

    b.      There is a two level enhancement because the Defendant unduly influenced a minor to engage in prohibited sexual conduct. U.S.S.G. § 2G1.3(b)(2). (SUBTOTAL 26)

    c.      The offense involved the use of a computer and an interactive computer service to otherwise unduly influence a minor to engage in prohibited sexual conduct with the minor. U.S.S.G. § 2G1.3(b)(3)(B). (SUBTOTAL 28)

    d.      There is a two level enhancement because the defendant knew or should have known that the victim was vulnerable. U.S.S.G. §3A1.1(b)(1). (SUBTOTAL 30)

    e.      **Relevant Conduct**: The defendant used a facility of interstate commerce to attempt to knowingly persuades, induces, and entice another minor to engage in sexual activity for which he could be charged with a criminal offense. The base offense level for the relevant conduct is also 24 and there is a 2 level enhancement for use of an interactive computer service. (SUBTOTAL 26).

    f.      The relevant conduct does not group with the offense of conviction, see U.S.S.G. §2G1.3(d). Two units/levels are added because the relevant conduct is 4 levels less serious than the offense of conviction. (SUBTOTAL 32)

    g.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

    h.      Accordingly, the adjusted base offense level is 29.

8.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

5

9. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Pending Forensic Analysis

10. The Defendant understands that as part of this plea agreement, he will provide consent and access, including the password necessary, for the Government to forensically analyze items seized from his residence in North Carolina (specifically, the Black and Silver 1GB LG USB Drive and the Black and Silver Geek Squad U3 Smart 2GB USB Drive. The ability of law enforcement to access and analyze these two USB drives is an express condition of this plea agreement. Further, if the forensic analysis reveals evidence of the production or attempted production of child pornography with any person other than those described in Attachment A, or any crime of violence (with the exception of the possession, receipt, and/or transportation/distribution of child pornography) including the Defendant engaging in sexually explicit conduct (as defined in 18 U.S.C. § 2256) with any minor, the Government will be free to prosecute those offenses.

### Rule 11 (c) (1) (C) Plea

11. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **9 years of imprisonment** in the custody of the Bureau of Prisons and **25 years of supervised release** is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

### Obligations of the Parties

12. This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing.

### Waiver of Appeal

13. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground

that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).

  b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever lawful sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

  c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## No Contact with Victim

14. While incarcerated and throughout the entire term of his imprisonment, the Defendant will not: (a) make any contact with the Minor Female as identified in the attached Statement of Facts (hereinafter "the victim"), or the immediate family of the victim, or (b) take any steps whatsoever to locate the victim, or the immediate family of the victim. The Defendant agrees to the entry of a Protective Order regarding any contact with the victim or her immediate family. The Defendant specifically agrees that this provision shall continue following his release and will be part of any supervised release conditions ordered by the Court at the time of sentencing. If the Defendant does not fulfill this provision, it will be considered a material breach of the Agreement, and this Office may seek to be relieved of its obligations thereunder. The Defendant waives and agrees to waive any right to challenge any prosecution based on the statute of limitations or double jeopardy, and knowingly and voluntarily agrees to toll the limitations period through the end of his incarceration and supervised release.

## Forfeiture

15. a. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

  b. Specifically, but without limitation on the government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities including: (i) one black Google Pixel cell phone, Model # G-2PW4100, Serial No. FA6C30304380; (ii) ~~one HP Envy laptop, Model # 7265NQW, Serial No. 8CG8113P4Q;~~ (iii) one black and silver 1GB LG USB drive; and (iv) one black and silver Geek Squad U3 Smart 2GB USB drive.

7

c.  The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the two above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d.  The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

e.  The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

16.  The Defendant agrees that, under 18 U.S.C. §§ 2259, 3663A, and 3771, the child identified in the Statement of Facts as "Minor Female" (the victim) is entitled to mandatory restitution. The restitution could include medical bills, compensation for time missed from work, and counseling costs (including travel) for any the victim related to the incident, if any such costs exist or are reasonably projected. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. The Defendant will make a good faith effort to pay any restitution. Regardless of the Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Consequences of Vacatur, Reversal or Set-Aside

17.  If a conviction entered pursuant to this Agreement is vacated, reversed, or set aside for any reason, then this Office will be released from its obligations under this Agreement, and any prosecution that is not time-barred as of the date of the signing of this Agreement (including any counts this Office has agreed to dismiss) may be commenced or reinstated against the Defendant,

notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. The Defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date this Agreement is signed, and any applicable statute of limitations will be tolled from the date of this Agreement until 120 days after the vacatur, reversal, or set aside becomes final. The Defendant waives any defenses based on double jeopardy, pre-indictment delay, or the Speedy Trial Act.

### Defendant's Conduct Prior to Sentencing and Breach

18.     a. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

   b.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Entire Agreement

19.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: ___/s/_____
Sandra Wilkinson
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7/26/18
Date

_____
Travis Wilmoth

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

7/26/18
Date

_____
Shari Derrow
Andrew R. Szekely

Rev. May 2018

## ATTACHMENT A - STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

TRAVIS WILMOTH, age 31, was a resident of Independence Place Drive, Fayetteville, North Carolina. Beginning no earlier than November 2017 and continuing through in or about May 11, 2018, WILMOTH repeatedly used a facility or means of interstate commerce to attempt to persuade, induce, and entice a minor female (then age 15) (hereinafter "Minor Female") to engage in sexual activity, believing and knowing she was under 18, and the sexual activity is a criminal offense for which could have been charged with.

On March 2, 2018, the FBI received a telephone call from the mother of Minor Female who reported that she had recently discovered that Minor Female had been using Facebook to chat online with WILMOTH since November 2017 and that became sexual in February 2018. Minor Female has a mental disability. Minor Female and her mother provided consent for FBI agents to take control of and to search Minor Female's Facebook account. WILMOTH had been a "Friend" of Minor Female's since 2013. During one Facebook chat, on February 15, 2018, WILMOTH asked Minor Female what year she was born, and Minor Female replied "2002." On February 18, 2018, WILMOTH asked Minor Female about her sexual experiences, asked for "dirty pics," and asked to watch her masturbate. On February 19, 2018, WILMOTH sent a cellphone picture of himself in a mirror showing himself shirtless. The message with this picture read "Just got out of the shower."

The FBI took control of Minor Female's Facebook Account and thereafter communicated with WILMOTH posing as Minor Female. During the ensuing chats with the Minor Female (now the undercover officer assuming the identity of Minor Female), WILMOTH repeatedly asked her to take "naughty" pictures and send them to him. Several chats were observed in which Minor Female told WILMOTH that she has a mental disability she has ADHD she takes medication and she has thoughts of hurting herself and suicide.

On March 14, 2018, WILMOTH discussed traveling to visit Minor Female and the possibility of performing sexual acts with her, as well as asked Minor Female to send naked pictures of her. In chats, dated between approximately March 7, 2018, and April 11, 2018, WILMOTH sent sexually explicit images and videos to Minor Female that depicted an erect penis and/or masturbation; one of these images depicted WILMOTH's face. In a chat on April 13, 2018, WILMOTH said he will probably drive up to Bel Air, Maryland, to see his father on May 12 for a few days and told Minor Female he will visit her before he goes to visit his dad. WILMOTH discussed oral sex with Minor Female.

On May 11, 2018, WILMOTH traveled from North Carolina to Maryland to meet with Minor Female with the intent to engage in sexual activity with her (specifically, oral sex). The Minor Female (still the undercover agent) directed WILMOTH to an apartment complex in Baltimore County. WILMOTH arrived in his vehicle at approximately 12 noon. He was

1

surveilled getting out of his vehicle and as he approached the front of the apartment complex where WILMOTH believed the Minor Female lived, law enforcement arrested WILMOTH.

WILMOTH was Mirandized and provided a voluntary interview. He stated the following in sum and substance:

WILMOTH knew he and Minor Female had a family connection. WILMOTH and Minor Female communicated via Facebook, but Minor Female texted him on one or two occasions. WILMOTH had never seen Minor Female in person. WILMOTH's Facebook account was disabled by Facebook recently and he did not know why. After it was disabled, WILMOTH was trying to find Minor Female because they were talking "friendly" for a while. WILMOTH created a new Facebook account, and became friends with Minor Female. When asked by agents how old Minor Female was, WILMOTH immediately answered that she was 15-years old. Minor Female told WILMOTH what grade she was in, and he believed she told him she was a sophomore or junior. Recently, Minor Female told WILMOTH she was 15-years old. WILMOTH was helping Minor Female with issues, such as family problems, and they talked as friends. According to WILMOTH, Minor Female started talking about "sexual stuff" so WILMOTH asked her age. WILMOTH said he should have stopped right there, but he did not do so. WILMOTH and Minor Female started talking about sexual stuff. At first it was fantasy-type chat, but recently it was about visiting Minor Female and doing things. At this time in the interview, WILMOTH said Minor Female was the one who brought up visiting and doing things together and that WILMOTH just never said no and said maybe they could do it when he came to visit his dad. However, he later told agents that he probably pushed it further than he should have.

WILMOTH stated that he came to Maryland for the purpose of having sex with Minor Female. WILMOTH left for Maryland at approximately 6:00 a.m., he stopped to get gas and use the bathroom, and then drove directly to Minor Female's apartment. WILMOTH and Minor Female talked about having sex, but on the way WILMOTH said he decided he was not going to have sex with her because it didn't feel right; instead, he said he was going to meet with her to talk, and at that time, he was going to tell her that he was not going to have sex with her. WILMOTH was not going to have sex with Minor Female because he didn't want to hurt her since she was a virgin. WILMOTH brought condoms with him to the meeting with Minor Female, which he had purchased at the store one month ago. WILMOTH did not purchase them for the plan to meet Minor Female for sex, but he brought the condoms with him, so he did not get her pregnant if they did have sex.

The following items were inside WILMOTH's car, which he drove to meet Minor Female: 1) a silver HP Envy 360 laptop, of which he was the only user, inside a laptop bag 2) a duffle bag of clothes and 3) a charger. WILMOTH got the HP computer approximately one month ago and he never talked to Minor Female on it; he only talked to Minor Female from his Google Pixel cell phone.

WILMOTH sent Minor Female the "wrong kind of pictures" which he explained were pictures of his penis. WILMOTH also sent Minor Female one 5- to 10-second video of him masturbating. WILMOTH thought he asked for pictures of Minor Female's breasts and said it

2

was more than likely he did ask for this. WILMOTH asked Minor Female for videos of masturbation from Minor Female and told her one time that he would love to see her doing oral sex with one of her boyfriends on webcam or record it. WILMOTH never tried to set up a webcam show to watch Minor Female masturbate, but he did call her on webcam just to talk to her.

WILMOTH said he never had sexual contact with anyone under 18-years old, since he has been an adult and that he was not talking to anyone under the age of 18-years old from his Facebook Account. WILMOTH was clear-headed and not under influence of drugs or alcohol or any medication.

WILMOTH talked to a 15-year old girl from North Carolina online via KIK, but it only lasted a few weeks and they stopped talking a couple months ago. Later, WILMOTH told agents he was not sure if she was 15-years old and could have been 17-years old. WILMOTH believed he met her on MeetMe.com, and they continued to chat via KIK. There were no conversations or pictures of this minor female on WILMOTH's cell phone, and he never met up with her in-person. WILMOTH's chats with this minor female got a little sexual, and she wanted him to have sex with her. The minor female sent WILMOTH one picture of her "boobs," but he deleted that picture along with the KIK Application a while ago. WILMOTH sent this minor female pictures of his penis.

WILMOTH used KIK off and on for a few years since he was in Korea (which he later identified as 2014 to 2015). WILMOTH last used this KIK account in February, at which time he deleted it. WILMOTH deleted the KIK Application from his cell phone to "get rid of the temptation." WILMOTH has struggled with pornography and sexual stuff all the time. WILMOTH was asked by agents about the temptations, and he said he liked sexual talk and flirting online. WILMOTH was tempted by 15-year old girls like Minor Female or the above minor female from KIK because it was new and something he hadn't done, but it's not right at all. WILMOTH knew it was not right, but he did it anyway because he was stupid.

Since WILMOTH bought his new computer, he said he has not looked at pornography on it, and he stopped looking at pornography completely. WILMOTH wiped his old computer and got rid of it at a pawn shop. WILMOTH used the old computer to look at adult pornography. WILMOTH has had his cell phone for two years, and he used this phone to chat with Minor Female and the above minor female on KIK. The pictures or video of him masturbating that he sent Minor Female are not on WILMOTH's cell phone. The pictures that Minor Female sent to WILMOTH are gone along with his Facebook account; he did not download them to another device or somewhere else. WILMOTH said there will not be any child pornography found on his cell phone. WILMOTH's acknowledged he had a problem controlling his temptations related to minors. To control these temptations, WILMOTH deleted applications and got a new computer. WILMOTH started counseling for many things, including his temptations. WILMOTH first started to struggle with his temptations concerning minor females around the time he met the above girl whom he chatted with on KIK and the time he began talking sexually with Minor Female.

3

WILMOTH provided agents with consent to search the items in his car and seized at the time of his arrest. WILMOTH said agents would not find any child pornography at his house. WILMOTH has seen child pornography online in ads posted on websites, but he never viewed it intentionally. WILMOTH never searched for child pornography, but he has searched for "young," which is usually 18-years old or older. WILMOTH believed he has searched for "teen" before, but he was looking for 18-years old and up. WILMOTH has never searched "teen porn," but he has searched "high school". WILMOTH searched the terms "high school cheerleaders" or "high school babysitters" in Google and found high-schoolers, babysitters, and cheerleaders on Pornhub and RedTube websites. WILMOTH consented to a polygraph exam. [handwritten: The results of the polygraph exam did not show deception.]

Following the polygraph exam, WILMOTH was voluntarily re-interviewed and stated the following. When WILMOTH was traveling to visit Minor Female, he had second thoughts about having sex with her. WILMOTH thought to himself that sex probably was not going to happen with Minor Female, but they would have oral sex instead. WILMOTH read fantasy, erotic stories about minors that he got from Lit erotica. [redacted]

SO STIPULATED:

_____
Sandra Wilkinson
Assistant United States Attorney

_____
Travis WILMOTH
Defendant

_____
Shari Derrow
Andrew R. Szekely
Counsel for Defendant

4